UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STANISLAV POPLAWSKI, JACEK RUDYK,
and BOHDAN PYROZHYK, individually and
on behalf of all other persons similarly situated
who were employed by METROPLEX ON
THE ATLANTIC, LLC, CONCORDE
RENOVATION OF NEW YORK, INC.,
JERZY SZYMCZYK, and MARIA
PIEKARSKA,

**MEMORANDUM & ORDER**

**11-CV-3765**

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 0 2 2012 ★

BROOKLYN OFFICE

                                        **Plaintiffs,**

– against –

METROPLEX ON THE ATLANTIC, LLC,
CONCORDE RENOVATION OF NEW
YORK, INC., JERZY SZYMCZYK, and
MARIA PIEKARSKA,

                                        **Defendants.**

**Appearances:**

For plaintiffs:      Lloyd Robert Ambinder
                     Virginia & Ambinder LLP
                     111 Broadway
                     14th Floor, Suite 1403
                     New York, NY 10006

                     James Emmet Murphy
                     Virginia & Ambinder LLP
                     111 Broadway
                     14th Floor, Suite 1403
                     New York, NY 10006

JACK B. WEINSTEIN, Senior United States District Judge:

I.   Introduction ............................................................................................ 2
II.  Facts ....................................................................................................... 3
     A.   Named Parties ................................................................................ 3
     B.   Defendants' Alleged Employment Practices.................................... 5



C.     Proposed Class ............................................................................................. 6
III.    FLSA Collective Action ................................................................................... 7
IV.    New York Labor Law Class Action................................................................. 10
A.     Rule 23(a) Factors ...................................................................................... 11
1.     Numerosity ............................................................................................. 11
2.     Commonality............................................................................................ 12
3.     Typicality ................................................................................................ 15
4.     Adequacy of Representation ................................................................... 17
B.     Rule 23(b)(3) Factors ................................................................................ 18
1.     Predominance.......................................................................................... 18
2.     Superiority............................................................................................... 22
C.     Class Counsel ............................................................................................. 23
V.     Conclusion ........................................................................................................ 25

## I.     Introduction

This case raises the interesting problem of whether an opt-in collective action and opt-out class action should be certified against defendants who have defaulted. The answer is that they should be. Defendants cannot prevent their employees from obtaining their full procedural and substantive rights under federal and state law by cowering silently in the swamp of neglect of employees' claims for wages.

Defendants' default is not a reason to slow disposition of a case involving unpaid wages. Such cases should be expedited since many workers depend upon their wages to be paid promptly so that they can meet their daily living expenses.

Plaintiffs are construction-related workers who were formerly employed by defendants at various construction sites in Brooklyn and Long Island, New York. They bring this action against their former employers, claiming violations of both the Fair Labor Standards Act

2

(FLSA), Pub. L. No. 75-718, ch. 676, 52 Stat. 1060 (codified at 29 U.S.C. §§ 201-219), and New York law, N.Y. Labor. L. §§ 191, 193, 633; N.Y. Comp. Codes & Regs. tit. 12, §§ 142-2.2, 142-2.4(a). Alleged is that defendants have engaged in a number of unfair labor practices, including refusing to pay time and a half when employees work more than forty hours; refusing to pay laborers who worked more than ten hours an additional hour of pay under New York's spread of hours requirement; and refusing to pay all regular-time wages owed.

Plaintiffs move for certification of an opt-in class of employees for the purposes of a collective action under the FLSA. *See* 29 U.S.C. § 216(b). They also seek to have certified an opt-out class under Federal Rule of Civil Procedure 23(b)(3) for their New York state overtime and  spread of hours claims.

To date, defendants have failed to file a response to plaintiffs' motion, an answer to their complaint, or to appear in the case. *See* Doc. Entry 19, Nov. 20, 2011 (noting that defense counsel was not present at prior hearing).

For the reasons set forth below, plaintiffs' motion is granted.  Plaintiffs shall promptly amend the complaint to include a claim for unpaid, regular time wages on behalf of the class.

## II.    Facts

### A.    Named Parties

Defendant Metroplex on the Atlantic, LLC ("Metroplex") is a New York corporation that is principally engaged in the condominium management and sales business. Compl. ¶ 10, Doc. Entry 1, Aug. 3, 2011 ("Compl."). Jerzy Szymczyk is a resident of Brooklyn, New York and is the officer, director, and/or owner of Metroplex. *Id.* ¶ 11. In this capacity, he has the power to:

3

hire and fire employees; supervise and control employee work schedules; determine the rate and method of payment of employees; and generate and maintain employment records. *Id.* ¶ 30.

Defendant Concorde Renovation of NY ("Concorde") is a New York corporation that is engaged primarily in the construction business. *Id.* ¶ 12. Defendant Maria Piekarska is a resident of Brooklyn, New York and is the officer, director, and/or owner of Concorde. *Id.* ¶ 13. Her powers and responsibilities over Concorde are identical to Szymczyk's over Metroplex. *Id.* ¶ 32.

Plaintiffs Stanislav Poplawski, Jacek Rudyk, and Bohdan Pyrozhyk are defendants' former employees. Poplawski was employed by defendants from September 2003 to June 2010, Pls.' Mem. of L. in Supp. of the Mot. for Conditional and Class Certification and Notice to the Class Ex. B ¶ 2 (Dec. of Stanislav Poplawski), Doc. Entry 21, Mar. 6, 2012 ("Poplawski Dec."); Rudyk from June 2006 to June 2010, Pls.' Mem. of L. in Supp. of the Mot. for Conditional and Class Certification and Notice to the Class Ex. C ¶ 2 (Dec. of Jacek Rudyk), Doc. Entry 21, Mar. 6, 2012 ("Rudyk Dec."); and Pyrozhyk from April 2008 to June 2010, Pls.' Mem. of L. in Supp. of the Mot. for Conditional and Class Certification and Notice to the Class Ex. A ¶ 2 (Dec. of Bohdan Pyrozhyk), Doc. Entry 21, Mar. 6, 2012 ("Pyrozhyk Dec.").

Poplawski worked for the defendants on construction projects; distributing and receiving materials and tools in the warehouse; and as a security guard. Poplawski Dec. ¶¶ 3, 5. He worked at a variety of sites, including "a residential building on Kingsland Street in Brooklyn, a school on Gate Avenue in Brooklyn, Defendant Jerzy Szymczyk's private house on Long Island,

and a residential building in Far Rockaway." *Id.* ¶ 4.  He was paid approximately $15 per hour for all of the hours he worked.  *Id.* ¶ 8.

Rudyk worked as a bricklayer.  Rudyk Dec. ¶ 3.  He also performed general construction work.  *Id.*  He worked on defendant's building in Far Rockaway and Jerzy Szymczyk's private house.  *Id.* ¶ 4.  He was paid approximately $18 per hour for all of the hours he worked.  *Id.* ¶ 7.

Pyrozhyk worked for the defendants as a tile setter and general construction worker. Pyrozhyk Dec. ¶ 2-3.  He worked on defendants' building in Far Rockaway.  *Id.* ¶ 4.  He was paid approximately $20 per hour for all of the hours he worked.  *Id.* ¶ 7.

### B.   Defendants' Alleged Employment Practices

 Plaintiffs claim that defendants have a pattern and practice of underpaying their employees in violation of state and federal law.  Pls.' Mem. of L. in Supp. of the Mot. for Conditional and Class Certification and Notice to the Class 5, Doc. Entry 21, Mar. 6, 2012 ("Pls.' Mem.").

In their capacities as construction workers or tradesmen, all defendants typically worked from 7:00 a.m. to 5:30 p.m. —ten and a half hours—five to six days per week.  Pyrozhyk Dec. ¶ 6; Poplawski Dec. ¶ 7; Rudyk Dec. ¶ 6.  They were allowed thirty minutes for lunch.  Pyrozhyk Dec. ¶ 6; Poplawski Dec. ¶ 7; Rudyk Dec. ¶ 6.  As a security guard, Poplawski worked in the lobby of the Far Roackaway building after work from 5:30 p.m. to 11:00 p.m., and on Sundays from 3:00 p.m. to 11:00 p.m. Poplawski Dec. ¶ 5.

5

The named plaintiffs frequently worked more than forty hours per week.  Pyrozhyk Dec. ¶ 12; Poplawski Dec. ¶ 13; Rudyk Dec. ¶ 12.  They attest that they witnessed their co-workers working similar hours.  Phyrozyk Dec. ¶ 13; Poplawski Dec. ¶ 14; Rudyk Dec. ¶ 13.

All three named plaintiffs were paid exclusively be checks issued by either Metroplex of Concorde.  Pyrozhyk Dec. ¶ 8; Poplawski Dec. ¶ 9; Rudyk Dec. ¶ 8.  They were never paid overtime.  Pyrozhyk Dec. ¶ 12; Poplawski Dec. ¶ 13; Rudyk Dec. ¶ 12.  Neither were their co-workers.  Phyrozyk Dec. ¶ 13; Poplawski Dec. ¶ 14; Rudyk Dec. ¶ 13.

None of the named plaintiffs have received wages for October 2009 to June 2010—the last months of their employment by defendants.  Phyrozyk Dec. ¶ 11; Poplawski Dec. ¶ 12; Rudyk Dec. ¶ 11.

Plaintiffs allege that, because the majority of workers employed by the defendants were foreign born and only worked for a short period, other potential class members would be "fearful or reluctant to bring this case on their own."  Phyrozyk Dec. ¶ 14; Poplawski Dec. ¶ 15; Rudyk Dec. ¶ 14.

### C.   Proposed Class

Plaintiffs initially proposed to certify the same class both for the purposes of a collective action for failure to pay overtime wages in violation of the FLSA, 28 U.S.C. § 216(b), and for a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure for defendants' violations of New York state law.  This class would consist of:

> Plaintiffs and all current and former employees who performed construction-related work for Jerzy Szymczyk and/or Maria Piekarska and/or Metroplex on the Atlantic and/or Concorde Renovation of New York Inc., located in Brooklyn, New York, from August 2005 to present.

6

*See* Pls.' Mem. of L. in Supp. of the Mot. for Conditional and Class Certification and Notice to the Class 1, Doc. Entry 21, Mar. 6, 2012 ("Pls.' Mem.").

Since the initial complaint was filed in August 2011, this class would include all employees whose New York Labor Law claims are not time-barred. *See* N.Y. Labor L. § 663(3) ("Notwithstanding any other provision of law, an action to recover upon liability imposed by this article must be commenced within six years."). The proposed class may include some plaintiffs whose FLSA claims are time-barred. *See* 29 U.S.C. § 255(a) (stating that the cause of action "may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued").

## III.    FLSA Collective Action

Section 216(b) of the FLSA permits employees to bring an action "to recover unpaid overtime compensation and liquidated damages from employers who violate the Act's overtime provisions . . . for and in behalf of himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action brought under Rule 23 of the Federal Rules of Civil Procedure, *see infra* Part V, a FLSA class action requires potential employee-plaintiffs to affirmatively opt-in by giving consent in writing to become a party to the action. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."); *Myers v. Hertz Corp.*, 624 F.3d 537, 542 (2d Cir. 2010); *Karic v. Major Automotive*

7

*Companies, Inc.*, 2011 WL 3235703, at *2 (E.D.N.Y. July 20, 2011) (internal quotations and citations omitted). The certification standard under section 216(b) is thus "considerably less stringent" than the requirements for class certification under Rule 23. *Avila v. Northport Car Wash, Inc.,* No. 10 CV 2211, 2011 WL 833642, at *3 (E.D.N.Y. Mar. 10, 2011) (quoting *Rodolico v. Unisys Corp.,* 199 F.R.D. 468, 481 (E.D.N.Y. 2001)).

    In order to certify a FLSA collective action, the court must find that the employees in the class are "similarly situated."

> Although the Second Circuit has yet to prescribe a particular method for determining whether members of a putative class are similarly situated, district courts in this circuit look to the "(1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class."

*Laroque v. Domino's Pizza, LLC,* 557 F. Supp. 2d 346, 351 (E.D.N.Y. 2008) (quoting *Guzman v. VLM, Inc.,* No. 07 CV 1126, 2007 WL 2994278 at *3 (E.D.N.Y. Oct. 11, 2007)).

    Certification of a FLSA collective action generally proceeds in two steps. *Myers*, 624 F.3d at 554-55. First, it must be determined, based on the pleadings and any accompanying affidavits, whether the employees in the class appear to be similarly situated. To meet this burden, "plaintiffs need only make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." *Doucoure v. Matlyn Food, Inc.,* 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (internal citations and quotations omitted); *see also Myers*, 624 F.3d at 555. If plaintiffs meet this "fairly lenient standard," conditional certification is typically granted and notice to potential plaintiffs authorized. *See Iglesias–Mendoza v. La Belle Farm, Inc.,* 239 F.R.D. 363, 367 (S.D.N.Y. 2007).

8

This initial determination is typically "based on the pleadings, affidavits and declarations" submitted by the plaintiffs. *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 130 (E.D.N.Y. 2011).

Second, after the completion of discovery, the court makes factual findings regarding whether the plaintiffs who have opted in are actually similarly situated to the named plaintiffs. *Myers*, 624 F.3d at 555; *see also Avila*, 2011 WL 833642, at *2. "The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." *Myers*, 624 F.3d at 555.

It is sufficient for conditional certification that plaintiffs attest to knowledge of similarly situated co-workers or complain of a company-wide policy. In *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54 (E.D.N.Y. 2011), the court conditionally certified a FLSA class on the basis of affidavits from two sanitation workers which indicated that they were not paid overtime wages and identified co-workers that were similarly situated. Similarly, in *Guzman v. VLM, Inc.*, the court conditionally certified a FLSA class where four bakery employees had complained of a "companywide policy of failure to pay overtime wages and alleging that many other employees who performed similar duties complained of the exact same policy, and have supported their affidavits with suggestive pay stubs for three of them." 2007 WL 2994278, at *3; *see also Rodriguez*, 784 F. Supp. 2d at 130-31 (certifying FLSA class where named plaintiffs submitted affidavits identifying persons that were employed with the same job duties and subject to the same wage policies); *Avila*, 774 F. Supp. 2d at 454-55 (certifying FLSA class of car wash

9

employees based on affidavits identifying themselves and others as subject to same wage policy which failed to compensate them for overtime).

Plaintiffs allege that defendants have a common practice of violating the FLSA's wage and overtime payment requirements. While the proposed class may include some plaintiffs whose FLSA claims are time-barred, this is not sufficient to show that they are not similarly situated for the purposes of initial certification. Defendants have not appeared in this action to dispute that plaintiffs are similarly situated to absent class members.

In light of these facts, plaintiffs have met the "fairly lenient standard" required for conditional FLSA certification.

## IV.    New York Labor Law Class Action

In order for a class action to be certified under Rule 23, it must satisfy the requirements of numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. Rule 23(a). In addition, where the proposed class relief is predominantly money damages, the court must consider whether a class action is superior to alternative methods of adjudication. Fed. R. Civ. P. Rule 23(b)(3).

The requirements for Rule 23 class certification must be established by a preponderance of the evidence, *Myers*, 624 F.3d at 547, and a district court must undertake a "rigorous analysis" in order to determine whether each of these Rule 23 requirements are met, *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011); *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 225 (2d Cir. 2006). To do so, any factual disputes relevant to each Rule 23 requirement must be resolved, and any underlying facts relevant to a particular Rule 23 requirement must be

established. *In re Initial Public Offerings Securities Litigation*, 471 F.3d 24, 41 (2d Cir. 2006). This duty is not abrogated even if the class certification issues overlap with the merits of the case. *Id.*; *see also Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551-52. A class may not be certified unless all of the Rule 23 requirements are met. *In re Initial Public Offerings Securities Litigation*, 471 F.3d at 40.

"Where a collective action under the FLSA . . . is based on the same set of facts has been approved, there is an inclination to grant class certification of state labor law claims." *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 202-203 (S.D.N.Y. 2006); *see also Garcia v. Pancho Villa's of Huntington Village, Inc.*, No. CV 09–486, 2011 WL 6287932, at *3 (E.D.N.Y. 2011); *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 163 (S.D.N.Y. 2008) ("[C]ourts in the Second Circuit routinely certify class action[s] in FLSA matters so that New York State and federal wage and hour claims are considered together.").

## A.    Rule 23(a) Factors

### 1.    Numerosity

The proposed class may only be certified if members are so numerous that joinder of all members would be impracticable. Fed. R. Civ. P. 23(a)(1) ("One or more members of a class may sue ... as representative parties on behalf of all members only if ... the class [and subclass are] so numerous that joinder of all members is impracticable."). There is no bright line rule for when a group is so numerous that joinder is impracticable.

Impracticability does not mean impossibility of joinder, but difficulty of joinder:

Determination of practicability depends on all the circumstances surrounding a case, not on mere numbers. Relevant considerations include judicial economy

11

> arising from the avoidance of a multiplicity of actions, geographic dispersions of class members, financial resources of class members, the ability of claimants to institute individual suits, and requests for prospective injunctive relief which would involve future class members.

*Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993).  Precise quantification of class members is not necessary, so long as plaintiffs reasonably estimate the number to be substantial.  *See id.* at 935; *McNeil v. New York City Hous. Auth.*, 719 F. Supp. 233, 252 (S.D.N.Y. 1989).  The Court of Appeals for the Second Circuit has held that a prospective class of forty or more raises a presumption of numerosity.  *See Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *Rodolico*, 199 F.R.D. at 473; *see also Cuzco v. Orion Builders, Inc.*, 262 F.R.D. 325, 333 (S.D.N.Y. 2009) (certifying class of eighty employees during three year period for unpaid overtime wages); *Toure v. Cent. Parking Sys.*, 2007 WL 2872455 at *6 (S.D.N.Y. Sept. 28, 2007) (certifying a class of forty-six members).

The proposed class is sufficiently numerous to be certified.  Plaintiffs allege that they personally worked with approximately forty to 160 similarly-situated employees on defendants' construction projects and sites.  *See* Pyrozhyk Dec. ¶ 5; Poplawski Dec. ¶ 6; Rudyk Dec. ¶ 5. They have provided lists of individuals who they remember working with.  *See* Pyrozhyk Dec. Ex. 1; Poplawski Dec. Ex. 1; Rudyk Dec. Ex. 1.  Because there are more than forty class members, numerosity is presumed.

### 2.   Commonality

In order to be certified, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  In its recent decision in *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011), the Supreme Court clarified its definition of commonality:

> What matters to class certification ... is not the raising of common 'questions'—
> even in droves—but, rather the capacity of a classwide proceeding to generate
> common *answers* apt to drive the resolution of the litigation. Dissimilarities
> within the proposed class are what have the potential to impede the generation of
> common answers.

*Id.* at 2551 (citing Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84

N.Y.U. L. Rev. 97, 132 (2009)). In order for certification to be proper, class claims must

"depend upon a common contention . . . of such a nature that it is capable of classwide

resolution." *Id.*

"Commonality does not mean that all issues must be identical as to each member, but it

does require that plaintiffs identify some unifying thread among the members' claims that

warrant[s] class treatment." *Garcia,* 2011 WL 6287932, at *4 (quoting *Damassia,* 250 F.R.D. at

156). Even a single common question is sufficient to meet the commonality requirement. *Wal-

mart Stores, Inc.,* 131 S.Ct. at 2556. The need for an individualized determination of damages

generally does not defeat the requirement. *E.g. Garcia,* 2011 WL 6287932, at *4.

Where the question of law involves "standardized conduct of the defendant ... [to the

plaintiff], a common nucleus of operative fact is typically presented and the commonality

requirement . . . is usually met." *E.g. D'Alauro v. GC Services Ltd. Partnership*, 168 F.R.D. 451,

456 (E.D.N.Y. 1996). In wage cases, the commonality requirement is usually satisfied where the

plaintiffs allege that defendants had a common policy or practice of unlawful labor practices.

*E.g. Noble v. 93 University Place Corp.*, 224 F.R.D. 330, 343 (S.D.N.Y. 2004) ("All potential

class members are alleged to have been harmed by a common practice—defendants' failure to

adequately compensate employees for overtime hours. The legal theory set forth in Noble's

Complaint is common to all class members—that this alleged failure to pay overtime violates

New York's labor law. Accordingly, the commonality requirement is satisfied.").

This case presents several common questions that are susceptible to common answers.

Plaintiffs allege that "the Named Plaintiffs' claims and those of the members of the putative class

arise from a common wrong: Defendants failed to pay, or to ensure payment, of the proper

regular time wages and overtime rates for work performed by Plaintiffs in any given work

week." Pls.' Mem. 15. The following questions of law and fact are thus common to the class:

> Common Factual Questions
>
> a. Whether Defendants paid the Plaintiffs and members of the class all their earned wages at the regular time rate required by federal and New York Labor Law?
> b. Whether Defendants paid the Plaintiffs and members of the class the rate of overtime pay required by federal and New York Labor Law?
> c. Whether Defendants paid the members of the class for all the overtime hours actually worked?
> d. Whether Defendants failed to maintain or even generate accurate records of the hours worked by the proposed class members?
>
> Common Legal Questions
> a. Whether Defendants complied with New York Labor Law pertaining to minimum wages for every hour worked and overtime compensation for hours worked beyond 40 each week?
> b. Whether the individual Defendants are personally liable for failure to pay minimum wages for every hour worked and overtime compensation for hours worked beyond 40 each week?

*Id.* at 16. All claims will be determined under New York law—the only state law

applicable.

The evidence indicates that the plaintiffs may be found to have been subject to a

uniform policy of unlawful labor practices. While plaintiffs and potential class members worked

14

different tasks at different wages, the entire class performed construction-related jobs for the defendant. Each named plaintiff has alleged that the defendant engaged in the same allegedly illegal wage practices. Pyrozyhk Dec. ¶ 12; Poplawski Dec. ¶ 13; Rudyk Dec. ¶ 12. All named plaintiffs attest that they witnessed their co-workers working overtime, and that they believe that none were paid overtime premiums. Pyrozhyk Dec. ¶ 13; Poplawski Dec. ¶ 14; Rudyk Dec. ¶ 13. All were, for all or a portion of their employment, manual laborers required to be paid weekly. Liability can be determined on a classwide basis.

There is sufficient proof for certification purposes of a uniform policy of underpayment, presenting a common question that is subject to classwide proof. While damages owed to each employee will require individual determinations, this computation issue does not destroy commonality.

### 3.   Typicality

The claims of the named plaintiffs must be typical of the claims of the class they seek to represent. Fed. R. Civ. P. 23(a)(3). The crux of the requirement is that "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citing *Falcon,* 457 U.S. at 157 n. 13). The requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert,* 960 F.2d 285, 291 (2d Cir. 1982) (citing *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562 (2d Cir. 1968), *vacated on other grounds,* 417 U.S. 156 (1974)). "Minor variations in the fact patterns" of

15

named plaintiffs and putative class members do not prevent a finding of typicality. *Robidoux*, 987 F.2d at 936.

All potential class members are current or prior construction-related employees of defendant and all are can be found to have been subject to a common policy or practice of paying illegal wages. Plaintiffs all worked overtime without premium or spread of hours pay. Pyrozhyk Dec. ¶ 13; Poplawski Dec. ¶ 14; Rudyk Dec. ¶ 13. All have been refused pay for their last months of work. Phyrozyk Dec. ¶ 11; Poplawski Dec. ¶ 12; Rudyk Dec. ¶ 11.

Like other potential class plaintiffs, Pyrozhyk and Rudyk were both employed exclusively in construction-related tasks. Their claims do not appear to diverge from those of the potential class.

Unlike the other plaintiffs and potential class members, Poplawski also worked as a security guard and in the warehouse for the defendants. Poplawski Dec. ¶ 5. Since a security guard is not a manual laborer, the defendants were not required to pay him for hours worked within seven days. Moreover, depending on the tasks assigned to him, his work in the warehouse also might not qualify as manual labor. While he may not have a viable claim for failure to pay wages within seven days for some or all of the class period for those jobs, he also performed "construction-related work" for the defendants during the class period and his claims for wage violations based on that work are typical of the class.

For purposes of Rule 23(a), plaintiffs' claims are typical of the class.

16

### 4. Adequacy of Representation

Named plaintiffs must fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a)(4). Representatives must have no interests conflicting with the class or subclass. *See Sosna v. Iowa*, 419 U.S. 393, 403 (1975). "The question of whether the named plaintiffs can fairly and adequately represent the class is one committed to the sound discretion of the district court." *County of Suffolk v. Long Island Lighting Co.*, 710 F. Supp. 1407, 1413 (E.D.N.Y. 1989) (internal quotation omitted).

Only a fundamental conflict will defeat the adequacy of representation requirement. *Schwab v. Philip Morris*, 449 F. Supp. 2d 992, 1107 (E.D.N.Y. 2006), *rev'd on other grounds sub nom. McLaughlin v. American Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 145 (2d Cir. 2001). Inquiry into adequacy "serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625-26.

Representative plaintiffs are only required to know enough about the case to "serve the interests of the class and ensure that they are not simply lending their names to a suit controlled entirely by the attorneys for the benefit of counsel." *Schwab*, 449 F. Supp. 2d at 1108; *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 61 (2d Cir. 2000); *In re Zyprexa Product Liability Litigation*, 2008 WL 4097408, at *145-46 (E.D.N.Y. Sept. 5, 2008); *In re Frontier Ins. Group Secs. Litig.*, 172 F.R.D. 31 (E.D.N.Y. 1997). Other factors that have been considered in determining the adequacy of representation include the named plaintiffs'

17

"knowledge of the case" and "credibility." *In re Joint E. and S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996).

Absent class members will be adequately represented by the named plaintiffs. Named plaintiffs allege a common policy or practice of failure to pay overtime and spread-of-hours premiums, as well as failure to pay wages in a timely manner. Their claims will require similar legal and factual proof to those of absent class members. As discussed in Part VI(C), plaintiffs are represented by an experienced litigation firm which has handled many similar suits in the past. There is no evidence that named plaintiffs' interests are not closely aligned with those of prospective class members.

**B.      Rule 23(b)(3) Factors**

**1.      Predominance**

The predominance requirement is a more demanding version of the commonality requirement of Rule 23(a). *See Amchem,* 521 U.S. at 623-624. The purpose of the "predominance" requirement of Rule 23(b)(3) is to ensure that trying the case as a class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615; *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 104 (2d Cir. 2007). The requirement thus "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem,* 521 U.S. at 623. It is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular

issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002); *see also In re Nassau County Strip Search Cases*, 461 F.3d 219, 227-28 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof.").

When determining whether common questions predominate, courts focus on whether questions of liability are common to the class members. *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 139. Even when there are individualized damage questions, certification may still be proper where liability can be determined on a class-wide basis. *See id.*; *see also Guzman*, 2007 WL 2994278 at *8.

In some wage cases, courts have refused to certify class actions where the particular claims and legal theories advanced would require an extensive inquiry into the facts and circumstances of an individual's employment. In *Alix v. Wal-Mart Stores, Inc.*, for example, plaintiffs sought to certify a class of all hourly Wal-Mart employees in the state, alleging supervisory personnel "implement[ed] a corporate-wide policy that systematically deprived many of its employees of proper compensation through the manipulation of time records and the implementation of employment practices designed to compel employees to work off the clock without compensation." 868 N.Y.S.2d 372, 374 (3d Dep't 2008). The New York State Appellate Division for the Third Department, applying a similar state law class certification standard, upheld the trial court's finding that common issues did not predominate. *Id.* at 376. According to the trial court:

> In order to establish entitlement to relief, not to mention proper apportionment of damages, plaintiffs must adduce specific evidence as to which associates worked

19

"off the clock," on what occasions, and for how long. Moreover, plaintiffs must
also demonstrate that defendant either knew or had reason to know that its
employees were thus engaged . . . . Absent such proof, plaintiffs will not have
established a prima facie case of violations of the Labor Law.

838 N.Y.S.2d 885, 893-94 (Albany Cnty. Sup. Ct. 2007). The affidavits of the named plaintiffs

showed that "the facts and circumstances surrounding the allegedly unpaid work vary

substantially from associate to associate." *Id.* at 895. Establishing defendant's liability would

require an examination of each employee's time cards and the corporate pay roll records, as well

as testimony as to specific circumstances under which entries were made. 868 N.Y.S.2d at 376.

Individual questions predominated over common ones.

Such cases are the exception rather than the rule. In the majority of wage cases, "if

plaintiffs establish that defendant had a practice or policy of failing to pay prevailing wages,

defendant's liability to all class members will be established." *Ramos v. SimplexGrinnell LP,*

796 F. Supp. 2d 346, 359 (E.D.N.Y. 2011). "[N]umerous courts have found that wage claims are

especially suited to class litigation—perhaps the most perfect questions for class treatment—

despite differences in hours worked, wages paid, and wages due." *Id.* In *Ramos,* for example,

the court held that, although "putative class members earned prevailing wages at different rates,

some worked more hours than others, and some are electricians and others are sprinkler fitters . .

. . these differences do not predominate over the main issue: whether defendant systematically

failed to pay its employees the prevailing wages due them." Similarly, in *Alleyne v. Time*

*Moving & Storage Inc.,* the court found that "differences among class members as to the number

of hours worked, the precise work they did and the amount of pay they received concern the

20

amount of damages to which any individual class member might be entitled, not the amenability of their claims to Rule 23 certification." 264 F.R.D. 41, 49 (E.D.N.Y. 2010).

In the instant case, predominance is satisfied because "the central issue is whether the defendants had a uniform policy or practice of denying overtime and spread-of-hours compensation to its employees." *Garcia*, 2011 WL 628793, at *6; *see also Aponte v. Comprehensive Health Mgmt Inc.*, No. 10-civ-4825, 2011 WL 2207586 at *11 (S.D.N.Y. June 2, 2011) (holding that common issues predominated where plaintiffs had "introduced sufficient generalized proof that defendant has engaged in a common practice to deny employees"); *Gortat v. Capala Bros. Inc.*, No. 07-civ-3629, 2011 WL 6945186 (E.D.N.Y. Oct. 16, 2009) (certifying class of employees who served different functions and were paid differently because question of whether they were paid for fewer hours than worked predominated); *Bolanos v. Norwegian Cruise Lines, Ltd.*, 212 F.R.D. 144, 148 (S.D.N.Y. 2002) (noting that "a uniform practice or scheme [by defendant] to deprive [its] employees of overtime wages ... [is] a significant step towards establishing liability to all class members").

Although, as already noted, each class member will have different damage claims depending on the length and time of employment, such individualized questions are easily manageable. They do not defeat predominance. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d at 141 ("There are a number of management tools available to a district court to address any individualized damages issues that might arise in a class action, including: (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3)

21

decertifying the class after the liability trial and providing notice to class members concerning

how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the

class.").

### 2. Superiority

For Rule 23(b)(3) certification to be appropriate, a class action must be the most "fair and

efficient" method of resolving disputes. Under Rule 23(b)(3), courts must consider four non-

exclusive factors:

> (A) the class members' interests in individually controlling the prosecution or
> defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already
> begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in
> the particular forum; and
> (D) the likely difficulties in managing a class action.

See Fed. R. Civ. P. 23(b)(3)(A)-(D). The class action device is particularly well-suited in

situations where "plaintiffs are allegedly aggrieved by a single policy of defendants . . . since

many nearly identical litigations can be adjudicated in unison." In re Nassau, 461 F.3d at 228

(internal citations and quotations omitted).

In this case, "a class action is superior to other available methods, given that the New

York Labor Law claims are nearly identical to the FLSA claims, which will be tried collectively

in this Court." Garcia, 2011 WL 6287932, at *7 (citing Alonso v. Uncle Jack's Steakhouse, Inc.,

No. 08 Civ. 7813, 2011 WL 4389636, at *13 (S.D.N.Y. Sept. 21, 2011). Moreover, "[t]rying this

action collectively 'allows for a more cost-efficient and fair litigation of common disputes' than

requiring each plaintiff to prosecute his or her own individual action." *Id.* (citing *Damassia,* 250 F.R.D. at 164).

It is unlikely that any potential class member has a particular interest in bringing a separate suit. The liability issues are common to all class members. While potential class members might possibly recover liquidated damages, N.Y. Labor L. § 198, such potential individual damage awards are not significant enough to indicate that any individual would "shoulder the burden and cost of [] vast and complex litigation," *Bolanos*, 212 F.R.D. at 158; *see also Noble*, 224 F.R.D. at 346 (noting small claims made individual adjudication unlikely). The record does not suggest that any separate litigation has been commenced or threatened. Plaintiffs allege that, because the majority of workers employed by the defendants were foreign born and only worked for a short period, other potential class members would be "fearful or reluctant to bring this case on their own." Phyrozyk Dec. ¶ 14; Poplawski Dec. ¶ 15; Rudyk Dec. ¶ 14. Because defendants are based in Brooklyn, New York and the potential class members likely reside in the New York area, resolution by the District Court for the Eastern District of New York is appropriate. *See Mentor v. Imperial Parking Systems, Inc.*, 246 F.R.D. 178, 187 (S.D.N.Y. 2007) (defendants and plurality of plaintiffs located in district). Finally, this action is manageable as a class action.

A class action is superior to individual litigations on these issues.

## C.    Class Counsel

A court certifying a class must ensure that it will be adequately represented by class counsel. *See* Fed. R. Civ. P. 23(g). It must consider:

23

(i) The work counsel has done in identifying or investigating potential claims in
the action;
(ii) Counsel's experience in handling class actions, other complex litigation, and
the types of claims asserted in the action;
(iii) Counsel's knowledge of the applicable law; and
(iv) The resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

The court "may consider any other matter pertinent to counsel's ability to fairly and

adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).  The adequacy of

counsel requirement is satisfied "where the class attorneys are experienced in the field or have

demonstrated professional competence in other ways, such as by the quality of the briefs and the

arguments during the early stages of the case." *Schwab*, 449 F. Supp. 2d at 1106, *rev'd on other*

*grounds sub nom. McLaughlin*, 522 F.3d 215.  To determine whether plaintiffs' counsel will

fairly and adequately represent the interests of the class and subclass, the court has considered

counsel's experience, competence, and effort in this litigation.  Fed. R. Civ. P. 23(g)(1)(A)(ii)-

(iii).

Plaintiffs' counsel has considerable experience in class actions and labor law, including

unpaid wage claims.  *See* Dec. of Lloyd Ambinder in Supp. of Mot. for Conditional and Class

Certification ¶¶ 4-5, Doc. Entry 21, Mar. 6, 2012.  They have invested time, money, and effort in

identifying and investigating potential claims in this class action.  Fed. R. Civ. P. 23(g)(1)(A)(i).

It is highly probable that counsel will continue its efforts to protect the class.  Fed. R. Civ. P.

23(g)(1)(A)(iv).  Their papers and argument to date reflect both skill and initiative

24

## V. Conclusion

Plaintiffs' proposed class and collective actions are certified. Plaintiffs are similarly situated to other employees subjected to defendants' alleged common policy of unlawful labor practices. These common claims predominate over any individual questions. Resolution of both federal and state claims on a classwide basis in a single forum is in the interests of justice and will promote judicial economy.

The magistrate judge is respectfully requested to expedite discovery since the payment of wages is involved.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: April 2, 2012
      Brooklyn, New York